NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KRIS KASZUBA, DBA HOLLYWOOD GROUP,**
*Appellant*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2019-1547

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92061976.

---

Decided:  August 5, 2020

---

KRIS KASZUBA, Del Mar, CA, pro se.

THOMAS L. CASAGRANDE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for intervenor.  Also represented by CHRISTINA J. HIEBER, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED, ERICA JEUNG DICKEY.

———————————

Before O'MALLEY, BRYSON, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This appeal stems from a cancellation proceeding before the Trademark Trial and Appeal Board ("Board"). The record reveals a proceeding peppered with unnecessary filings, ultimately concluding with sanctions in the form of default judgment. Finding no abuse of discretion or legal error in the Board's determinations, we *affirm*.

## I. BACKGROUND

Cancellation proceedings before the Board are largely governed by the Federal Rules of Civil Procedure. *See* 37 C.F.R. § 2.116(a). This cancellation proceeding presents a tangled procedural history. We discuss only those aspects relevant to our decision.

## A. Pleadings

Appellant Kris Kaszuba ("Kaszuba") successfully registered his mark HOLLYWOOD BEER on the Supplemental Register on July 15, 2008, as Registration No. 4,469,935. The registration was based on the mark's purported use in commerce for beer. On August 4, 2015, Hollywood Vodka, LLC ("HVL") filed an application for cancellation of Kaszuba's mark under Section 1064 of the Lanham Act.[1] HVL alleged that: (1) the Board had refused registration of HVL's pending trademark application partly because of the registration of Kaszuba's mark; (2) Kaszuba had committed fraud on the USPTO in obtaining

———————————

[1] Despite several notices from the court, Petitioner HVL did not file an entry of appearance in this appeal. The Director of the United States Patent and Trademark Office ("USPTO") filed a notice of intervention pursuant to 35 U.S.C. § 143.

registration of his mark; and (3) Kaszuba had not used his mark in commerce.

Kaszuba filed an answer to the petition on September 15, 2015. He followed this filing with a motion to dismiss, which the Board refused to consider because Kaszuba filed it after filing his answer. The Board subsequently conducted a discovery conference, and, upon reviewing the pleadings, determined that HVL had failed to properly plead its fraud claim. Accordingly, the Board directed HVL to file an amended petition repleading the fraud claim within fifteen days.

It is undisputed that HVL did not meet its Friday, March 25, 2016 deadline to file an amended petition. Instead, HVL filed serial amended petitions on March 28, 2016 ("Amended Petition") and March 29, 2016 ("Second Amended Petition"), respectively.[2] These amended petitions were only a few days late, and differed materially in just one respect: the Second Amended Petition corrected a typographical error, specifying that in its "Claim 1," HVL was seeking cancellation based on "fraud" not "abandonment." In response, Kaszuba filed a motion to dismiss, asserting, *inter alia*, that HVL's amended pleadings were untimely and that HVL did not have a real interest in the cancellation proceeding. HVL opposed the motion to dismiss, arguing that the Board, in its discretion, should accept the untimely filing because of excusable neglect and that it had plausibly alleged a real interest in the proceeding.

The Board construed HVL's excusable neglect arguments as a request to reopen the time to file HVL's amended petition and to accept the Second Amended Petition as the operative pleading in the matter. J.A. 366

---

[2] The Board received paper copies of these petitions on March 31, 2016, and April 4, 2016, respectively.

(citing Fed. R. Civ. P 6(b)).  It granted HVL's request based on excusable neglect after conducting an analysis of the factors articulated in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380 (1993).  J.A. 366–69.  The Board also concluded that HVL had (1) sufficiently pled entitlement to bring this cancellation proceeding; and (2) adequately pled its fraud claim; and (3) failed to plead the elements of an abandonment claim.  J.A. 372–73.

## B.  Discovery

Like the pleadings stage, discovery was belabored.  On January 23, 2017, in response to Kaszuba's motion to disqualify HVL's newly appointed counsel, the Board issued an order denying the motion and noting that "[p]rogress in this case has been delayed significantly based on the filings of both parties."  J.A. 528.  The Board required Kaszuba to obtain leave of the Board's Interlocutory Attorney before filing any future submissions in the case.  It did not require HVL to do the same because HVL had retained new counsel.

On November 27, 2017, the Board granted-in-part HVL's motion to compel discovery after Kaszuba failed to respond to interrogatories and document requests.  The Board ordered Kaszuba to provide discovery but denied HVL's motion to the extent HVL requested sanctions against Kaszuba.  At the same time, the Board warned Kaszuba that if he failed to respond to the discovery, HVL's "remedy may lie in a renewed motion for sanctions, including entry of judgment as appropriate."  J.A. 744.  The Board also required both parties to seek leave before filing any motions.

Rather than responding to the discovery, Kaszuba filed a request for permission to submit a request for reconsideration of the Board's November 27, 2017 order.  After conducting a telephone conference, the Board denied this request.

Kaszuba again failed to respond to the discovery requests. Another round of a motion for sanctions (filed by HVL without leave), denial, and a motion for reconsideration (filed by Kaszuba without leave), and denial followed. In its denials of these motions, the Board remarked that Kaszuba had "deliberately sought to evade and frustrate" HVL's efforts to obtain discovery. J.A. 821. Although the Board concluded that imposing sanctions would be unduly harsh, and gave Kaszuba an extension to serve the delayed discovery, it again warned Kaszuba that if he failed to comply with the discovery order, judgment would be entered against him on motion by HVL. J.A. 822. Undeterred, Kaszuba continued to file additional "communications" with the Board, seeking reconsideration of its orders. He also filed two untimely petitions with the Director alleging unfair treatment by the Board, despite the Board granting him a third extension to serve the delayed discovery.

Kaszuba never served the requested discovery. After the time for service had passed, HVL filed a renewed motion for sanctions after obtaining leave from the Board, seeking either an entry of judgment against Kaszuba or an order precluding Kaszuba from introducing any evidence at trial. On December 13, 2018, the Board granted the motion for sanctions—this time entering judgment against Kaszuba. The Board recognized in its decision that default judgment is a harsh remedy. It found, however, that it was warranted under the circumstances because "no less drastic remedy would be effective and there is a strong showing of willful evasion." J.A. 5.

Kaszuba timely filed a notice of appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II. DISCUSSION

We review the Board's legal conclusions de novo, and its factual findings for substantial evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003) (citations omitted). On appeal, Kaszuba argues that the Board

(1) impermissibly allowed HVL's "untimely" and "futile" amendments to the petition; (2) erred in denying Kaszuba's motion to dismiss for failure to plead entitlement to the cancellation proceeding and fraud; and (3) abused its discretion in imposing sanctions and entering default judgment against Kaszuba.  We address each issue in turn.

## A.  Excusable Neglect

After analyzing HVL's claim of excusable neglect under the four factors identified in *Pioneer Investment Services Co.*, the Board accepted the Second Amended petition even though it was filed out of time.  In *Pioneer*, addressing the meaning of "excusable neglect" (as used in the Federal Rules), the Supreme Court explained that the determination is:

> [A]t bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  These include . . . [1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

507 U.S. at 395.  We have endorsed the Board's use of the *Pioneer* factors for determining excusable neglect in the context of its own regulations.  *FirstHealth of Carolinas, Inc. v. CareFirst of Maryland, Inc.*, 479 F.3d 825, 828–29 (Fed. Cir. 2007).  We review the Board's application of the factors for an abuse of discretion.  *Id.*

On appeal, Kaszuba argues that the Board erred in its excusable neglect determination.  Specifically, Kaszuba contends that the Board combined the first two factors and overlooked the fact that HVL filed the amended petitions seven months after the initial petition.  Appellant's Br. 13.  In Kaszuba's view, this negates the Board's finding that HVL's delay was "short."  Kaszuba therefore asks us to

reverse the Board's ruling. We see no error or abuse of discretion in the Board's analysis.

With respect to the first *Pioneer* factor, the Board found that there was no evidence of prejudice to Kaszuba by reopening the time for HVL for file its amended petition. The Board did not see any "surprise" to Kaszuba or disruption to the orderly administration of the proceeding on account of the minimally delayed filing. As to the second factor, the Board determined that the delay was not significant. HVL filed an amended petition only three days out of time, and most of that period fell over a weekend. The Board determined that the third factor (reason for delay) was within HVL's reasonable control. As to the fourth factor (bad faith), the Board concluded that there was no allegation or evidence of any bad faith. Considering the four factors together, the Board found that the lack of prejudice outweighs the fact that the delay was caused by HVL's negligence. It therefore concluded that HVL had established excusable neglect.

We have previously affirmed the Board's refusal to find excusable neglect where counsel did not provide an explanation as to why other authorized individuals in the same firm could not have assumed responsibility for the case. *See FirstHealth*, 479 F.3d at 829 (finding no excusable neglect where the second and third factors weighed against such a finding). But, as the Supreme Court has explained, the excusable neglect inquiry is an equitable one, and the Board properly considered all the circumstances surrounding HVL's delay. Here, as the Board noted, the delay was short. Given these circumstances, we see no abuse of discretion in the Board's determination of excusable neglect.[3]

---

[3]    We reject Kaszuba's contention that HVL's filing was, in fact, delayed by seven months. Kaszuba either misunderstands or misrepresents the procedural posture at

Having determined that there was no abuse of discretion in excusing the three-day delay in HVL's filing of its amended petition, we now turn to the remaining issues on appeal with the understanding that HVL's Second Amended Petition is the operative petition in this proceeding.

## B.  Motion to Dismiss

The Board's denial of a motion to dismiss pursuant to Rule 12(b)(6) is a question of law that we review de novo. *See Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 1324 (Fed. Cir. 1999).  On review, we accept the non-movant's allegations as true and draw all reasonable inferences in the non-movant's favor.  *Id.*  "Dismissal is appropriate 'if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Young v. AGB Corp.*, 152 F.3d 1377, 1379 (Fed. Cir. 1998) (quoting *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1353 (Fed. Cir. 1991)).  On appeal, Kaszuba challenges the Board's determination that HVL sufficiently pled entitlement to bring this cancellation proceeding and its fraud claim.  We address each in turn.

### 1.  Entitlement to Seek Cancellation

We note, as we have in other recent cases, that it is improper to discuss requirements for establishing a statutory cause of action in terms of "standing."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014); *Australian Therapeutic v. Naked TM, LLC*, No. 19-1567, Slip. Op. at 5 (Fed. Cir. July 27, 2020); *Ritchie v. Simpson*, 170 F.3d 1092, 1094 (Fed. Cir. 1999) ("'case' and

---

issue.  Kaszuba answered HVL's initial petition, and the Board instituted the proceeding.  It was only after a discovery conference months later that the Board directed HVL to amend its petition, which HVL did, albeit three days late.

'controversy' restrictions for standing do not apply to matters before administrative agencies and boards, such as the [US]PTO."). Kaszuba and the Board both make this mistake in this cancellation proceeding, as does the Director. The requirements to bring a cancellation proceeding under 15 U.S.C. § 1064 are appropriately viewed as interpretations of a statutory cause of action. *See Empresa Cubana Del Tabaco v. General Cigar Co., Inc.*, 753 F.3d 1270, 1275 (Fed. Cir. 2014) (citing *Lexmark*, 572 U.S. at 125–28).

Section 1064 permits a petitioner to seek cancellation of a registered trademark if he believes that he is or will be damaged by the registered trademark. *Id.* The petitioner must demonstrate (1) a real interest in the proceeding and (2) a reasonable belief of damage. *Empresa Cubana*, 753 F.3d at 1275. These "element[s] of a cause of action . . . must be adequately alleged at the pleading stage in order for the case to proceed." *Lexmark*, 572 U.S. at 134 n.6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009)). For purposes of our review, we "accept as true all well-pled and material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Ritchie*, 170 F.3d at 1097.

Kaszuba argues that HVL did not adequately plead "standing" to bring the cancellation proceeding because it failed to allege a reasonable belief of damage from Kaszuba's registered mark. Appellant's Br. 10. In Kaszuba's view, HVL should have addressed the other issues raised in the Board's rejection before it could allege a reasonable belief of damage from Kaszuba's mark. *Id.* at 11. Kaszuba also challenges HVL's ownership of the rejected trademark application, arguing that, without an ownership interest in the application, HVL cannot bring this cancellation proceeding. *Id.* at 9–10. Kaszuba's arguments are meritless.

A petitioner may demonstrate entitlement to seek cancellation of a registered mark if the USPTO rejects its

trademark application based on a likelihood of confusion with the registered mark. *See Empresa Cubana*, 753 F.3d at 1274–75. In *Empresa Cubana*, we held that petitioner's trademark application is a "legitimate commercial interest," satisfying the real interest requirement. *Id.* And, we explained that "blocking" of a petitioner's trademark application was sufficient to demonstrate a reasonable belief of damage. *Id.* HVL's Second Amended Petition included allegations along exactly these lines.

Specifically, HVL pled a real interest in the proceeding because it stated that its predecessors-in-interest filed Trademark Application No. 86/069,833, to register the HOLLYWOOD VODKA mark. J.A. 260–61. HVL also alleged that it acquired all interest and goodwill in that application from the original applicants by virtue of an assignment. J.A. 261. And, HVL alleged that the USPTO rejected its application based on a likelihood of confusion with Kaszuba's registered HOLLYWOOD BEER mark. Thus, HVL sufficiently pled both the real interest and reasonable belief of damage elements of the cause of action under § 1064. This is hardly a case, therefore, where the petition contains general allegations of harm. *See e.g. Bank v. Al Johnson's Swedish Rest. & Butik, Inc.*, 795 F. App'x 822, 825 (Fed. Cir. 2019) (finding claimant had failed to plead a reasonable basis for his belief of damage where he alleged that the Goats on the Roof Registration was "offensive to numerous persons" including himself).

We also reject Kaszuba's arguments based on HVL's alleged lack of ownership in the HOLLYWOOD VODKA application. First, at the pleadings stage, "the facts asserted by [the petitioner] need not prove his case on the merits." *Ritchie*, 170 F.3d at 1098. Of course, HVL's allegations do not conclusively establish entitlement to bring this cancellation proceeding and it must prove its case. But, as discussed above, HVL's allegations survive a motion to dismiss. Second, we have recently held that "neither § 1064 nor our precedent require that a petitioner in a

cancellation proceeding must prove that it has proprietary rights in its own mark in order to demonstrate a real interest in the proceeding and a belief of damage." *Australian Therapeutic*, Slip. Op. at 7. Accordingly, the Board did not err in concluding that HVL sufficiently pled entitlement to bring this cancellation proceeding.

## 2. Fraud

"Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (internal quotations and citations omitted). Federal Rule of Civil Procedure 9(b), applicable to Board proceedings under 37 C.F.R. § 2.116(a), requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). But, the rule explains, "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally." *Id.* We have construed the rule to require "identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [US]PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009) (construing Rule 9 in the context of pleading inequitable conduct in patent cases).

The Board concluded that HVL had sufficiently pled its claim of fraud by alleging that: (1) Kaszuba submitted fabricated specimens during prosecution of his trademark; (2) Kaszuba knew that his representation was false at the time he signed the statement of use in his application; (3) this false representation was material to the USPTO's examination of Kaszuba's application for registrability; and (4) Kaszuba intended to deceive the USPTO into issuing the registration. J.A. 371.

Kaszuba argues that, contrary to the Board's conclusion, HVL did not plead fraud with a heightened degree of

particularity and did not allege any instances of willful or knowingly-made false representations during prosecution of the application. Appellant's Br. 15. Kaszuba takes issue with the fact that HVL alleged fraudulent representations "on information and belief." *Id.* He also contends that HVL's fraud allegations are premised on allegations that Kaszuba "knew or should have known" that his statements were false. *Id.* Such allegations, according to Kaszuba, allege mere negligence, not fraud or intent to deceive. *Id.* at 16. We are not convinced.

As the Director points out, Kaszuba misunderstands Rule 12(b)(6) and the Board's orders. Director's Br. 41–43. For one, Kaszuba points to cases that discuss the requirements of proving allegations of fraud and intent to deceive. But on a motion to dismiss pursuant to Rule 12(b)(6), we are not concerned with whether HVL can prove its allegations of fraud and intent to deceive on the merits. Instead, we look to whether HVL has pled its fraud claim with particularity. We conclude that it has.

In its Second Amended Petition, HVL alleged that, pursuant to applicable federal regulations, Kaszuba was required to register his beer label on the Certificate of Label Approval ("COLA") registry before selling beer in commerce. J.A. 262. HVL alleged that no such label was registered on the COLA registry, even though Kaszuba represented to the USPTO during prosecution of his trademark registration application that he was selling beer in commerce. HVL also alleged that Kaszuba knowingly made false material statements to the USPTO by stating that the HOLLYWOOD BEER mark was in use on goods as of the date of the application. J.A. 264. And, HVL alleged that Kaszuba submitted false specimens of labels to fraudulently induce the USPTO to issue his use-based trademark registration. *Id.* HVL alleged that Kaszuba knew that the HOLLYWOOD BEER mark was not in use in commerce on beer as of the filing date of his application. J.A. 265. Finally, HVL alleged that Kaszuba similarly

misrepresented to the USPTO that the HOLLYWOOD BEER mark was in use on goods as of the date of filing his Section 8 Affidavit in order to maintain his registration of the mark.  J.A. 266.

These allegations, taken together, provide the "specific who, what, when, where, and how of the material misrepresentation or omission committed before the [US]PTO." *Exergen Corp.*, 575 F.3d at 1328.[4]  Accordingly, we hold that the Board did not err in concluding that HVL sufficiently pled its fraud claim.

## C.  Default Judgment

In cases of "repeated failure to comply with reasonable orders of the . . . Board, when it is apparent that a lesser sanction would not be effective[,]" the Board may order appropriate sanctions as defined in Trademark Rule 2.120(g)(1) and Fed. R. Civ. P. 37(b)(2), including entry of judgment.  *Benedict v. Super Bakery, Inc.*, 665 F.3d 1263, 1268–69 (Fed. Cir. 2011).  We review decisions concerning discovery sanctions for abuse of discretion.  *Carolina Exports Int'l, Inc. v. Bulgari, S.p.A.*, 108 F.3d 1394 (Fed. Cir. 1997).

Kaszuba argues that the cancellation of his mark as a sanction was unjust and based on "erroneous and inadequate findings."  Appellant's Br. 21.  He laments being unable to have his day in court and being denied his right to be heard on the merits.  But, Kaszuba does not offer any explanation for his refusal to comply with the Board's orders compelling discovery, despite the multiple extensions afforded to him.  Nor does he provide any basis for us to

---

4    Kaszuba also argues that the "late-filed" Amended Petition pled "abandonment," not fraud.  Appellant's Br. 15.  We reject this argument because it focuses on a typographical error in HVL's Amended Petition that was corrected by HVL in the operative Second Amended Petition.

conclude that the Board abused its discretion in imposing the sanction of default judgment.  Instead, Kaszuba contends that it was unjust to cancel his mark given the "confusion" regarding the operative pleading, the contention regarding which of the attorneys represented HVL, and the fact that the discovery was outside the scope of the undismissed claim at issue.  Appellant's Br. 21.  We do not agree.

The record supports the conclusion that the Board did not abuse its discretion in imposing the sanction of default judgment, harsh as it may be.  The Board found that no less drastic remedy would be effective and that there was a strong showing of willful evasion by Kaszuba.  *See* J.A. 5 ("We believe [such a] situation exists here.").  In entering default judgment, the Board concluded that, rather than complying with its orders, Kaszuba "repeatedly and willfully acted in a manner to evade" the discovery requests.

We see no abuse of discretion here.  The November 27, 2017 Order compelling discovery warned Kaszuba that he was risking default judgment by not responding to the discovery.  In subsequent orders and communications, the Board repeatedly reminded Kaszuba to comply with the November 27, 2017 Order.  It also denied HVL's initial motions for sanctions, and gave Kaszuba multiple extensions to comply with the November 27, 2017 Order.  Rather than complying with the discovery order, Kaszuba chose to file untimely petitions with the Director requesting review of the Board's orders and alleging unfair treatment by the Board.  Kaszuba never served the discovery responses.  Like the trademark owner in *Benedict*, Kaszuba "continually failed to comply with Board orders, and . . . hampered reasonable procedures appropriate to resolution of this trademark conflict [and] . . . offered no explanation of why no discovery responses had been made." *Benedict*, 665 F.3d at 1269.  Accordingly, we conclude that the Board did not abuse its discretion in entering default judgment against Kaszuba.

### CONCLUSION

We have considered Kaszuba's remaining arguments and find them unpersuasive. For the foregoing reasons, the decision of the Board is *affirmed*.

## AFFIRMED

### COSTS

The parties shall bear their own costs.